UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN WHITMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17 CV 2145 ACL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner of Operations, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM</u>

Plaintiff Sean Whitmer brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Whitmer's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I.  Procedural History

Whitmer filed his application for SSI on June 5, 2014, claiming that he became unable to work on March 5, 2014, because of depression, anxiety, low blood pressure, horseshoe kidney,

mood swings, stress, chronic pain and fatigue, constant sleeping, difficulty staying on task, and headaches. (Tr. 161-66, 210.) Whitmer was 20 years of age at the time of his alleged onset of disability. His claims were denied initially. (Tr. 107-11.) Following an administrative hearing, Whitmer's claims were denied in a written opinion by an ALJ, dated July 15, 2016. (Tr. 12-25.) Whitmer then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on June 19, 2017. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Whitmer first argues that the "findings of residual functional capacity do not find support in substantial evidence contained within the evidence of record, and failed to properly consider the opinion of the treating source, and examining specialists, as such, the decision runs afoul of the standards contained in *Singh* and *Lauer*." (Doc. 15 at 6.) He next contends that the "hypothetical question to the vocational expert does not capture the concrete consequences of Plaintiff's impairment, and therefore, the response of the vocational expert does not represent substantial evidence." *Id.*

## II.   The ALJ's Determination

The ALJ first found that Whitmer has not engaged in substantial gainful activity since June 5, 2014, the alleged onset date. (Tr. 14.) In addition, the ALJ concluded that Whitmer had the following severe impairments: major depression and anxiety disorder. *Id.* The ALJ found that Whitmer did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 15.)

As to Whitmer's RFC, the ALJ stated:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to performing simple and routine tasks, can frequently interact with supervisors and coworkers, can occasionally interact with the public, but he can only occasionally deal with changes in a work setting.

(Tr. 19.)

The ALJ found that Whitmer's allegations regarding the extent of his limitations were not entirely consistent with the evidence. (Tr. 23.) The ALJ further found that Whitmer has no past relevant work, but was capable of performing other jobs that exist in significant numbers in the national economy. (Tr. 24.) The ALJ therefore concluded that Whitmer was not under a disability, as defined in the Social Security Act, since June 5, 2014. (Tr. 25.)

The ALJ's final decision reads as follows:

Based on the application for supplemental security income protectively filed on June 5, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

# III. Applicable Law

## III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial

evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a

whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

## III.B.   Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that

would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental

limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a,

416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work:   activities of daily living, social functioning, concentration, and persistence or pace.   *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   The Commissioner makes this determination by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.   *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.   Discussion

### A.      RFC Determination

Whitmer argues that the ALJ erred in weighing the medical opinion evidence in determining his mental RFC.[1]   He contends that the determination fails to comply with the

---

[1]The ALJ found that Whitmer's physical impairments were non-severe, and imposed no

standards contained in *Singh* and *Lauer*. Whitmer further argues that the ALJ did not properly analyze the issue of Whitmer's noncompliance with psychiatric medications.

RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of his limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

In determining Whitmer's RFC, the ALJ first discussed Whitmer's testimony regarding his limitations. (Tr. 19.) Whitmer testified that he was unable to work because he has difficulty interacting with people. (Tr. 19, 40.) He stated that he becomes really nervous around people, becomes short of breath, and experiences panic attacks lasting between a few seconds to twenty minutes. *Id.* Whitmer testified that he attended special education classes, consisting of small classes of up to eight students. *Id.* He also indicated that he has difficulty with concentration and does not bathe regularly. (Tr. 19, 50.) Whitmer testified that he spends his day watching

---

limitations resulting from these impairments. Whitmer does not challenge the ALJ's findings with regard to his physical impairments. As such, the Court's discussion will be limited to Whitmer's mental impairments.

videos, playing video games, reading about the Civil War, and sleeping. (Tr. 20, 45-46.) He is able to dress himself, cook his own meals, and occasionally mow the yard. *Id.*

The ALJ noted that Whitmer's father, Scott Whitmer, also testified at the hearing. (Tr. 20.) Mr. Whitmer testified that his son spends the majority of his day in his room, does not socialize, and has a short attention span. (Tr. 20, 52) Mr. Whitmer indicated that he stopped monitoring his son's medication compliance after his son graduated from high school. (Tr. 20, 55.) He testified that his son worked at one job for a few days, after which he quit due to irritability and a temper. *Id.* He worked another seasonal job for a few months. (Tr. 20, 58-59.) Mr. Whitmer testified that his son experienced suicidal intent after working. *Id.*

The ALJ next discussed the medical evidence. She acknowledged that Whitmer was diagnosed with major depressive disorder in 2008, at the age of fourteen. (Tr. 20, 293.) Whitmer was hospitalized for three days at that time due to suicidal ideation with a plan. *Id.* Whitmer complained of bullying at school at that time. *Id.* He had another inpatient psychiatric admission on November 11, 2009, at the age of fifteen, because he acted aggressively. (Tr. 20, 303.) Whitmer had initially experienced symptoms of aggression, mood swings, anxiety, panic, and possible attention deficit hyperactivity disorder ("ADHD"). *Id.* He was encouraged to attend school in a smaller setting. *Id.*

Whitmer began seeing John Canale, M.D., for treatment of his mental impairments on March 30, 2011, at the age of seventeen. (Tr. 20, 506.) Whitmer reported symptoms of sleep disorder, difficulty concentrating, loss of interest, and fatigue. *Id.* Dr. Canale indicated that Whitmer had a three-to-four-year history of depression and had tried several different psychotropic medications without improvement. *Id.* Upon examination, he was alert and cooperative, his flow of thought was decreased, his affect was depressed, his memory was intact,

and his insight and judgment were good. (Tr. 20, 507.) Dr. Canale diagnosed him with major depression. He continued Whitmer on Klonopin[2] and started him on Zoloft.[3] *Id.*

Whitmer continued to see Dr. Canale on a regular basis for medication adjustments. (Tr. 20, 501-05, 598-604.) On March 20, 2012, Whitmer reported that he was graduating in May and that he was looking for a job as a Civil War reenactor. (Tr. 20, 502.) Whitmer reported he was working at Wal-Mart part-time in October 2012. (Tr. 604.) In April 2013, Dr. Whitmer stated that Whitmer has been "on and off his meds," and was feeling depressed. (Tr. 21, 604.) He noted that Whitmer was looking for a job in July 2013. (Tr. 21, 603.)

Whitmer underwent a psychological evaluation with David Peaco, Ph.D. on May 1, 2013, upon the referral of the state agency. (Tr. 21, 510-13.) Whitmer had graduated high school, where he received special education services due to "emotional disturbance." (Tr. 21, 510.) He had worked part-time stocking and pushing carts for about two months, but quit that job after a conflict with his employer over a small injury he sustained at work. *Id.* Upon mental status examination, Whitmer cooperated but was somewhat withdrawn, his affect was flat, his mood was anxious and somewhat depressed, and his memory and intellectual functioning were above average. (Tr. 511.) Whitmer had begun to engage in compulsive picking behavior of his hands with a self-injurious component the past several months. *Id.* Specifically, Whitmer was using a nail cutter to cut skin off his fingers and the palms of his hands, and Dr. Peaco observed bright red sores all over Whitmer's hands. *Id.* Whitmer had previously been evaluated for Autism Spectrum Disorder and it was found there were insufficient symptoms to diagnose him with the

---

[2]Klonopin is a benzodiazepine indicated for the treatment of panic attacks. *See* WebMD, http://www.webmd.com/drugs (last visited September 4, 2018).

[3]Zoloft is a selective serotonin reuptake inhibitor ("SSRI") indicated for the treatment of depression, anxiety, and panic attacks. *See* WebMD, http://www.webmd.com/drugs (last visited September 4, 2018).

disorder. (Tr. 21, 511.) Dr. Peaco found that Whitmer exhibited some symptoms of Autism Spectrum Disorder during the evaluation, such as a mild impairment in the use of nonverbal behaviors to regulate social interaction, the development of few peer relationships, and a preoccupation with the Civil War. *Id.* Dr. Peaco indicated that Whitmer was extremely inactive during the day, does not do household chores unless repeatedly prodded by his parents, and has few social contacts. (Tr. 512.) When asked about hallucinations, Whitmer reported that he sometimes "heard Morse Code going off in his head." *Id.* Dr. Peaco diagnosed Whitmer with major depression, generalized anxiety disorder, impulse control disorder (not otherwise specified), compulsive picking, pervasive developmental disorder (not otherwise specified), and atypical autism, with a GAF score of 50. (Tr. 512.)

The ALJ next noted Whitmer required a three-day hospitalization at St. Joseph Health Center on September 7, 2013, due to reports of worsening depression with suicidal thoughts and a suicidal gesture. (Tr. 21, 616.) Whitmer reported that he had been stable on Zoloft, but ran out of medication for a week because he forgot to fill his prescription. *Id.* He was at a friends' house playing video games when he started to feel depressed, had thoughts of harming himself, and held a knife to his throat. *Id.* Whitmer's friends called 911, and police brought Whitmer to the hospital. *Id.* Whitmer denied any active suicidal ideations, intentions, or plans; or previous suicide attempts. *Id.* He did not "see the connection between going off the antidepressant medication and recent increase in suicidality." (Tr. 616.) Upon examination, Whitmer was pleasant; his psychomotor activity was decreased; his mood and affect were dysphoric and flat; his concentration was decreased; his memory was intact; and his insight and judgment were limited to partial. *Id.* Whitmer was diagnosed with major affective disorder and depression with anxiety; and was assessed a GAF score of 30-40. (Tr. 617.)

Whitmer continued to see Dr. Canale for follow-up and medication management.    On March 10, 2014, Dr. Canale noted that Whitmer was looking for a job and was working with vocational rehabilitation.    (Tr. 564.)    Dr. Canale continued Whitmer on Zoloft.    *Id.*    On July 16, 2014, Dr. Canale completed a form indicating that Whitmer has a diagnosis of major depression, is able to understand and remember instructions, is able to interact socially and adapt to his environment, and his ability to sustain concentration and persistence in tasks is impaired.    (Tr. 563.)    On July 31, 2014, Dr. Canale noted that Whitmer was not taking his medication regularly, was depressed, and his personal hygiene had worsened.    (Tr. 22, 602.)    Dr. Canale prescribed Cymbalta.[4]    *Id.*    On September 30, 2014, Whitmer was taking Effexor,[5] and was spending a lot of time alone.    (Tr. 601.)    Dr. Canale recommended that Whitmer go to vocational rehabilitation. *Id.*    In December of 2014, Dr. Canale noted that Whitmer was awaiting disability, and was spending time at home sleeping.    (Tr. 600.)    He increased his dosage of Effexor.    *Id.*    On September 18, 2015, Dr. Canale stated that Whitmer still felt depressed and was spending his time at home sleeping and awaiting disability benefits.    (Tr. 599.)    Dr. Canale advised Whitmer that he needed to manage his depression and take his medication.    *Id.*    Two months later, on November 24, 2015, Whitmer advised he was feeling better and doing more around the house, but still applying for disability.    *Id.*    He also indicated he was spending more time with friends.    *Id.* Five months later, on April 27, 2016, Dr. Canale stated that Whitmer was not doing very well, was sleeping a lot, and was not seeing friends.    (Tr. 598.)    He was not taking his medications regularly, and reported that he did not want to take the medication.    *Id.*    Dr. Canale stated that he would take Whitmer off his medications at Whitmer's request.    *Id.*

---

[4]Cymbalta is indicated for the treatment of depression and anxiety.    *See* WebMD, http://www.webmd.com/drugs (last visited September 4, 2018).

[5]Effexor is indicated for the treatment of depression, anxiety, panic attacks, and social anxiety disorder.    *See* WebMD, http://www.webmd.com/drugs (last visited September 4, 2018).

The ALJ next discussed the medical opinion evidence. "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

After examining Whitmer on May 1, 2013, Dr. Peaco expressed the opinion that Whitmer is able to understand and remember simple instructions; his persistence in completing tasks is severely impaired; his concentration is unimpaired; his social functioning is markedly impaired;

and his capacity to cope with and adopt to the world around him is markedly impaired due to depression, periods of anxiety, qualitative impairment in his ability for social interactions, and a compulsive impulse control disorder. (Tr. 512-13.) For the following reasons, the ALJ assigned "little weight" to Dr. Peaco's opinion: (1) Dr. Peaco saw Whitmer on only one occasion on May 1, 2013, which was prior to the alleged onset date of disability; (2) Dr. Peaco provided an opinion that is inconsistent with the July 2014 opinion provided by treating doctor Dr. Canale that Whitmer could interact socially in a work setting and adapt to a work environment; and (3) Whitmer was not regularly taking his prescribed medications when Dr. Peaco saw him. (Tr. 21.)

The ALJ next discussed the April 27, 2016 medical source statement completed by Dr. Canale. (Tr. 22.) Dr. Canale indicated that he first saw Whitmer in March 2011, and that he had been seeing him "only infrequently," or about two times a year, since that time. (Tr. 22, 589.) He stated that Whitmer is noncompliant with his medications and that he was currently taking none. *Id.* He listed the clinical findings and symptoms as very depressed, decreased sleep, loss of interest, decreased motivation, withdrawal-few outside contacts, blunt or flat affect, feelings of worthlessness, poverty of content of speech, generalized persistent anxiety, mood disturbance, difficulty concentrating, psychomotor retardation, and easy distractibility. (Tr. 22, 589-90.) Dr. Canale expressed the opinion that Whitmer had "no useful ability to function" in the following areas: maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, complete a normal work day without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress. (Tr. 591.) He found that Whitmer was unable to meet competitive standards in these areas: remember work-like procedures, understand and remember very short and simple instructions, maintain attention for two-hour segments, work in coordination

with or proximity to others without being unduly distracted, make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, and be aware of normal hazards and take appropriate precautions. *Id.* Whitmer was "seriously limited but not precluded" in his ability to carry out very short and simple instructions. *Id.* Dr. Canale stated that Whitmer would "not be able to function in a work situation at any level due to the severe nature of his depression." *Id.* Finally, he found that Whitmer would be absent from work more than four days a month due to his impairments. (Tr. 593.)

The ALJ stated that the following issues "undermine the value of the opinion" offered by Dr. Canale: (1) Dr. Canale indicated that he only infrequently saw Whitmer; (2) his opinion is "quite conclusory and provides very little explanation" of the evidence upon which he relied; (3) the treatment notes and other medical evidence of record are not consistent with the opinion; (4) Dr. Canale noted that Whitmer is noncompliant with his medications; and (5) the record indicates that Whitmer simultaneously sought work and was non-compliant with his medications during the time these severe symptoms were found. (Tr. 22.) The ALJ indicated that she was assigning "little weight" to Dr. Canale's opinions. (Tr. 23.) She also stated that she was assigning little weight to the low GAF scores assessed by Dr. Canale on the basis that they do not appear in Dr. Canale's treatment notes. *Id.*

The ALJ then concluded as follows:

The overall pattern in this case is that when the claimant is compliant with his medications, his symptoms improve and when he is not they worsen. For example, during the hearing the claimant's father, who picks up his medications from the pharmacy and is thus familiar with the claimant's medication compliance, testified that during high school the claimant regularly took his medications as prescribed. Further, Dr. Canale's treatment notes show medication compliance

from March 30, 2011 through March 20, 2012. School records showed that the claimant's symptoms were under control during this period. He regularly attended school, obtained good grades, interacted with his classmates and participated in extracurricular activities such as the Library Club. During 2011 and 2012, which was his senior year of high school he participated in a Work Experience program from which he received excellent performance evaluations. In this program, the claimant greatly exceeded objectives in all areas including personal standards, work performance, and work quality. The claimant graduated from high school in May 2012. Dr. Canale's treatment notes from July 18, 2012 state that the claimant had stopped taking his medications and he was feeling depressed again. The undersigned requested that the claimant supply pharmacy records showing prescriptions filled by the claimant. Those records show that since the alleged onset date in this case the claimant has regularly failed to obtain prescriptions written by Dr. Canale for his mental health disorders.

(Tr. 23.)

The undersigned finds that the mental RFC assessed by the ALJ lacks the support of substantial evidence. The ALJ discredited the opinions of the examining psychiatrists, both of which were much more restrictive than the RFC formulated by the ALJ. Central to the ALJ's decision was her finding that Whitmer's noncompliance with psychotropic medications caused the assessed limitations.

The ALJ may consider failure to continue treatment in determining whether a claimant may receive benefits. 20 C.F.R. § 404.1530, (individual who fails to follow prescribed treatment without a good reason will not be found disabled). Social Security Regulation 82-59 instructs that "a full evaluation must be made in each case to determine whether the individual's reason(s) for failure to follow prescribed treatment is justifiable." SSR 82-59, 1982 WL 31384, at *4.

The Eighth Circuit has recognized that psychological and emotional difficulties may deprive a claimant of the "rationality to decide whether to continue treatment or medication." *Pate-Fires,* 564 F.3d 935, 945 (8th Cir. 2015). Moreover, the Eighth Circuit has recognized that "a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse." *Id.*

(alterations and citations omitted). Accordingly, the ALJ must determine whether a claimant's noncompliance is willful or a medically-determinable symptom of his mental disorder. *Id.* Failure to make this critical distinction, despite evidence in the record supporting involuntary noncompliance, requires remand. *See also Sharp v. Bowen,* 705 F. Supp 1111, 1124 (W.D. Penn. 1989) (To determine whether a claimant with a mental impairment reasonably refused treatment, the ALJ should consider whether the plaintiff "justifiably refused in light of his psychological, social or other individual circumstances" because "[a]n individual with a severe mental impairment quite likely lacks the capacity to be 'reasonable.'"). Moreover, in cases involving plaintiffs with mental impairments, "'justifiable cause' must be given a more lenient, subjective definition." *Benedict v. Heckler,* 593 F. Supp. 755, 761 (E.D. N.Y. 1984).

Here, the ALJ did not consider whether Whitmer's noncompliance with his prescription medication was attributable to his mental disorders. Rather, the ALJ appears to have assumed that Whitmer's failure to follow his prescribed regimen was willful and, thus, unjustifiable. The ALJ observed that Whitmer's symptoms improve when he is compliant with his medications and worsen when he is not. The ALJ cited Whitmer's father's testimony that Whitmer regularly took his medications when he was in high school, and noted that his symptoms were under control during this period. (Tr. 23.)

Mr. Whitmer testified that, when his son was "still in high school we [kept] more of a watch on him to get him up for school, make sure he had his medications." (Tr. 56.) He stated that, after his son finished high school, he stopped ensuring that he took his medications. *Id.* Mr. Whitmer explained that, "with me working as continuous as I do and other family medical conditions going on with his mother I couldn't babysit both." *Id.* Mr. Whitmer stated that his son does not currently take his medication every day "because when he sleeps I'm sure he misses

his doses because of that other condition." (Tr. 55.) He testified that he and his wife had to force his son to bathe when he was in high school, and were "lucky if we got him to do it once or twice in a couple weeks." (Tr. 62.) Mr. Whitmer stated that, currently, his son "never" bathes despite his urging, and that he has a "stench" every day. (Tr. 62, 65.)

Based on this record, the ALJ's apparent determination that Whitmer's noncompliance was voluntary on his part, without further investigation and fact-finding, is speculative and not based on substantial evidence. The record suggests that Whitmer was able to take his medications and attend high school only because his parents provided significant support and management of his conditions.

Further, the ALJ's conclusion that Whitmer's symptoms would be controlled if he were compliant with his medications lacks support. Whitmer began receiving mental health treatment and was first prescribed psychotropic medications in 2007. (Tr. 510.) As discussed above, Whitmer was hospitalized in 2008 and 2009, due to suicidal ideation. (Tr. 293.) At the time of Dr. Peaco's evaluation in 2013, Whitmer was taking Zoloft. (Tr. 510.) Upon examination, Dr. Peaco noted significant symptoms, including reduced amount and rate of speech, withdrawn appearance, unfocused flow of thinking, flat affect, anxiety, depression, self-injurious behavior, and symptoms of Autism Spectrum Disorder. (Tr. 511.) Dr. Peaco found that Whitmer's persistence in completing tasks was severely impaired and that he was not able to continue in his most recent job due to his inability to cope with the social interactions required at work. (Tr. 512.)

The ALJ assigned little weight to Dr. Peaco's opinions because it was based on a one-time examination that occurred prior to Whitmer's alleged onset of disability date, and because it was inconsistent with Dr. Canale's subsequent finding that Whitmer could interact socially in a work

setting.   The ALJ also assigned little weight to the opinions of Dr. Canale.   In addition to Whitmer's non-compliance with medication, the ALJ cited the fact that Dr. Canale only infrequently saw Whitmer, Dr. Canale's opinion was conclusory and not consistent with his own treatment notes, and Whitmer sought work during the time he experienced severe symptoms.

Whitmer began seeing Dr. Canale for treatment of his mental impairments in 2011.   (Tr. 506.)   Dr. Canale adjusted Whitmer's medications and, as the ALJ pointed out, often indicated that Whitmer was not compliant with his psychotropic medications.   In July 2014, Dr. Canale found that Whitmer was able to interact socially and adapt to his environment, but his ability to sustain concentration and persistence in tasks was impaired.   (Tr. 563.)   Dr. Canale noted that Whitmer's depression and personal hygiene had worsened at that time.   (Tr. 602.)   Dr. Canale took Whitmer off his medications in April 2016 at Whitmer's request.   (Tr. 598.)   Dr. Canale indicated that Whitmer was not taking medication at the time Dr. Canale provided his April 27, 2016 source statement finding disabling impairments.   (Tr. 589.)

The ALJ discredited Dr. Canale's opinions, in part, because she found they were conclusory and lacked support in the medical evidence.   The ALJ, however, points to no medical evidence supporting her determination that Whitmer is capable of performing a range of simple work on a sustained basis if Whitmer were compliant with his medications.   Dr. Canale, as Whitmer's treating psychiatrist, was in the best position to assess Whitmer's work-related limitations.   The other medical evidence of record, including the evidence of multiple inpatient psychiatric admissions, difficulties Whitmer experienced at school, and the testimony of Whitmer and his father, supports the presence of significant psychiatric symptomatology affecting Whitmer's ability to function in the workplace.   Although Whitmer's noncompliance with

psychotropic medications is an issue in this case, some medical evidence must support the ALJ's determination regarding Whitmer's work-related limitations.

In sum, the ALJ's failure to obtain medical evidence regarding the effect of Whitmer's mental impairments on his ability to remain compliant with his medication requires remand. The Court does not reach Whitmer's additional argument of error at step five of the sequential evaluation. On remand, the ALJ shall obtain, and consider, evidence to determine the cause of Whitmer's noncompliance and the effect of such noncompliance on his RFC. The ALJ will then formulate a mental RFC based on the record as a whole.

**/s/** Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of September, 2018.